UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| VIKRAM SINGH,<br><br>    Petitioner,<br><br>v.<br><br>KRISTI NOEM, et al.,<br><br>    Respondents. | No. 1:26-CV-036-H |

## ORDER

    Vikram Singh was apprehended at the border in 2022 and paroled into the United States on humanitarian grounds. He demands a bond hearing but has not applied for one in light of the Board of Immigration Appeals' recent decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), which held that "applicants for admission" must be detained without bond under Section 1225(b)(2)(A) of the INA. He now petitions this Court for a writ of habeas corpus, alleging that his detention without bond violates the INA, the INA's implementing regulations, and the Fifth Amendment's Due Process Clause.

    But his argument fails on multiple levels. First, it flatly contradicts the statute's plain language. As an "alien . . . who arrives in the United States" and as "[a]n alien present in the United States who has not been admitted," he is an "applicant for admission" subject to Section 1225's mandatory-detention provision. Second, the history of legislative changes confirms this result. Previously, aliens who entered illegally without inspection received more rights than aliens who entered lawfully. By defining "applicant for admission" to include all aliens who have not been admitted and mandating detention for this category, Congress eliminated the prior incentives to enter illegally.

Because the legal arguments and facts presented in this petition are indistinguishable from those addressed in the Court's prior decision in *Goyo Martinez v. Villegas*, No. 1:25-CV-256, 2026 WL 114418 (N.D. Tex. Jan. 15, 2026), "it appears from the application that the applicant or person detained is not entitled" to a writ of habeas corpus. 28 U.S.C. § 2243. Thus, while the Court would ordinarily issue an order to show cause, it exercises its discretion to forgo that step here. *Id.*; *see Wottlin v. Fleming*, 136 F.3d 1032, 1034 (5th Cir. 1998). The petition (Dkt. No. 1) is denied.

**1.    Background**

Singh is a native and citizen of India. Dkt. No. 1-2 at 1. In November 2022, he attempted to enter the United States on foot at or near Calexico, California. *Id.* He was apprehended. But his entry happened during "a wave of illegal entries" across the U.S.-Mexico border and amidst a severe "lack of space to hold detainees." *Goyo Martinez*, 2026 WL 114418, at *1. So, ICE released him on humanitarian parole. *See* Dkt. Nos. 1 ¶ 35; 1-2 at 1. At some point recently, ICE re-detained Singh and placed him into custody pending removal. *See* Dkt. No. 1 ¶ 36. He is currently detained at the Bluebonnet Detention Center in Anson, Texas. *Id.* ¶ 2. The Notice to Appear charged him with removability as an alien present in the United States without being admitted or paroled. *Id.* ¶¶ 3, 35; 8 U.S.C. § 1182(a)(6)(A)(i). His removal proceedings are still underway. *See* Dkt. No. 1-3.

Singh is held without bond and neither requested nor received a bond hearing. Dkt. No. 1 ¶ 37. That is because the BIA's recent opinion in *Yajure Hurtado* holds that aliens present in the United States without admission must be detained without bond under

Section 1225(b)(2)(A) of the INA for the duration of their removal proceedings. 29 I. & N. Dec. at 220.[1]

Instead, Singh filed a petition for a writ of habeas corpus in the Northern District of Texas's San Angelo Division. Dkt. No. 1. However, because Singh is detained at the Bluebonnet Detention Center near Abilene, this Court ordered Singh's case transferred to the Abilene Division. Dkt. No. 3. The petition states three claims for relief. First, he argues that his detention without bond violates the INA. Dkt. No. 1 ¶¶ 39–41. He claims he is not subject to mandatory detention under Section 1225(b)(2)(A), but he is instead entitled to a bond hearing under Section 1226(a) as an alien who has "previously entered the country and [had] been residing in the United States prior to being apprehended and placed in removal proceedings by [DHS]." *Id.* ¶ 40. Second, and for the same reasons, he urges that his detention without bond violates the INA's implementing regulations. *Id.* ¶¶ 42–45. Finally, he contends that his detention without bond violates his due process rights. *Id.* ¶¶ 46–49.

## 2. Legal Standard

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). With 28 U.S.C. § 2241, Congress authorized federal courts to

---

[1] Typically, a "person seeking habeas relief must first exhaust available administrative remedies." *Hinojosa v. Horn*, 896 F.3d 305, 314 (5th Cir 2018). An exhaustion requirement in this context is likely prudential, not jurisdictional. *See* 8 U.S.C. § 1252(d)(1) (requiring exhaustion only for a "final order of removal"). That said, it would be "an exercise in futility" for Singh to seek a bond hearing and appeal the denial to the BIA. *Garner v. U.S. Dep't of Lab.*, 221 F.3d 822, 825 (5th Cir. 2000). The BIA issued *Yajure Hurtado* on September 5, 2025. Given the recency, there is little prospect that the BIA would reconsider *Yajure Hurtado* here. Thus, Singh's habeas petition does not present an exhaustion problem. *See id.*

resolve habeas petitions, including in immigration-detention cases. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001). Habeas exists solely to "grant relief from unlawful imprisonment or custody." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976). Thus, for the writ to issue, the petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). A court considering a habeas petition must "determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

**3.    Analysis**

As noted above, Singh raises three claims in his habeas petition—two involving Sections 1225 and 1226 of the INA and their implementing regulations, and another based on the Fifth Amendment's Due Process Clause. Dkt. No. 1 ¶¶ 39–49. His arguments are similar, if not identical, to those the Court rejected in *Goyo Martinez* and in numerous other cases.[2] Even so, the Court considers the arguments raised in Singh's petition to address whether bond-less detention of aliens present in the United States without admission violates the INA, its implementing regulations, or the Constitution. On each count, the answer is no.

**A.    The INA authorizes Singh's detention without bond.**

Singh's claim under the INA involves the interplay between two related statutes. First is Section 1225(b)(2)(A), the INA's mandatory-detention provision. That provision sets out detention requirements for "applicant[s] for admission" to the United States. 8

---

[2] *See, e.g.*, *Garibay-Robledo v. Noem*, ___ F. Supp. 3d ___, No. 1:25-CV-177, 2026 WL 81679 (N.D. Tex. Jan. 9, 2026); *Gomez Hernandez v. Lyons*, No. 1:25-CV-216, 2026 WL 31775 (N.D. Tex. Jan. 6, 2026); *Montelongo Zuniga v. Lyons*, ___ F. Supp. 3d ___, No. 1:25-CV-221, 2025 WL 3755126 (N.D. Tex. Dec. 29, 2025).

U.S.C. § 1225(b)(2)(A).  Specifically, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title."  *Id.*  Subject to certain narrow exceptions discussed below, Section 1225(b)(2)(A) "mandate[s] detention of applicants for admission until certain [removal] proceedings have concluded."  *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018).  Nothing in Section 1225 "says anything whatsoever about bond hearings."  *Id.*

Section 1226(a), on the other hand, permits discretionary detention.  "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."  8 U.S.C. § 1226(a).  Instead of detention, the Attorney General "may" release the alien on bond, "[e]xcept as provided in subsection (c)."  *Id.* § 1226(a), (2)(A)–(B).  Section 1226(c) in turn requires the Attorney General to "take into custody any alien" who is inadmissible or removable for involvement in certain criminal offenses.  *Id.* § 1226(c)(1)(A)–(E); *see Jennings*, 583 U.S. at 303.  If Section 1226(c) does not apply, and if an alien is released on bond pending removal, the Attorney General may still re-detain him "at any time."  8 U.S.C. § 1226(b).

The government has consistently represented in this Court and many other courts[3] that detention for aliens like Singh is mandatory under Section 1225(b)(2)(A).  The question, then, is whether Singh—who was detained at the border and released into the United States on humanitarian parole—is an "applicant for admission."  8 U.S.C. § 1225(b)(2)(A).  If so, he "shall be detained" without bond.  *Id.*  If not, he is entitled—at the very least—to a bond hearing under Section 1226(a).

---

[3] *See supra* n.2.

### i. As an "applicant for admission," Singh is subject to mandatory detention without bond under Section 1225(b)(2)(A).

As always, the Court "begins with the statutory text, and ends there as well if the text is unambiguous." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004). Here, the text is as unambiguous as can be.

First, Section 1182(d)(5)(A) expressly states that an alien on humanitarian parole is "to be dealt with in the same manner as that of any other applicant for admission to the United States." Indeed, the INA's implementing regulations define parolees as arriving aliens, 8 C.F.R. § 1.2, and Section 1225(a)(1) defines applicants for admission in part as "[a]n alien . . . who arrives in the United States." Thus, as an "applicant for admission" who "is not clearly and beyond a doubt entitled to be admitted," Singh "shall be detained" under Section 1225(b)(2)(A). And although the Secretary of Homeland Security has discretion to grant humanitarian parole "for urgent humanitarian reasons or significant public benefit," 8 U.S.C. § 1182(d)(5)(A), parole "shall not be regarded as an admission" and can be revoked at any time, *id.* Here, Singh was paroled initially due to limited bed space, but the Secretary has now reversed that parole, and Singh is not entitled to a bond hearing.

Second, Section 1225 also defines an "applicant for admission" as "[a]n alien present in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1). Singh is an "alien." He is "present in the United States." He "has not been admitted" because he did not "lawful[ly] ent[er] [the country] after inspection and authorization by an immigration officer." *Id.* §§ 1101(a)(13)(A)–(B) (defining "admission" and "admitted"); 1182(d)(5)(A) (noting that paroled aliens are not admitted). As an "applicant for admission" who "is not

clearly and beyond a doubt entitled to be admitted," Singh "shall be detained" under Section 1225(b)(2)(A). Again, he is not entitled to a bond hearing.

Singh resists these straightforward conclusions. First, as he sees it, the fact he was detained on humanitarian parole does not distinguish him from the run-of-the-mill petitioner under Section 1226. And since he is not a "recent arrival[] seeking admission," Section 1225(b)(2)(A) does not apply to him. Dkt. No. 1 ¶ 14. But as the Court explained in *Goyo Martinez*, "Section 1182(d)(5)(A) does not permit a neat distinction between aliens who are arriving in the literal sense and aliens who are trying to 'remain' while on parole." 2026 WL 114418, at *3 (rejecting *Jimenez v. FCI Berlin, Warden*, 799 F. Supp. 3d 59, 71 (D.N.H. 2025)). Instead, Section 1182(d)(5)(A) defines Singh as an applicant for admission, and the INA implementing regulations define him as an arriving alien, which is a specific subset of an applicant for admission. *See Jennings*, 583 U.S. at 288 (discussing Section 1182(d)(5)(A)); 8 C.F.R. § 1.2. Thus, "it is clear that he is subject to mandatory detention." *Goyo Martinez*, 2026 WL 114418, at *3; *see Akhtar v. Gonzales*, 450 F.3d 587, 594 & n.31 (5th Cir. 2006) (discussing *Zheng v. Gonzales*, 422 F.3d 98, 117 (3d Cir. 2005)).

Second, even if the Court assumed for sake of argument that Singh was not an arriving alien, he is still an applicant for admission. Singh argues that Section 1225(b)(2)(A) applies only to "people arriving at U.S. ports of entry or who [have] recently entered the United States." Dkt. No. 1 ¶ 32. It does not, in his view, "govern those aliens who have already entered the United States and have been residing here for a period of time." *Goyo Martinez*, 2026 WL 114418, at *4 (brackets and internal quotation marks omitted); Dkt. No. 1 ¶ 32. Why? Because when it comes to "applicant[s] for admission," the statute requires detention "if the examining officer determines that an alien *seeking admission* is not clearly

and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). As the argument goes, aliens who have resided in the United States for years after entering illegally or through humanitarian parole are not "seeking admission" to enter and thus are not subject to mandatory detention.

This argument suffers from several flaws. First, it ignores the plain text of the statute. Section 1225 expressly defines "applicant for admission." That definition covers "[a]n alien present in the United States who has not been admitted *or* who arrives in the United States." 8 U.S.C. § 1225(a)(1) (emphasis added). The word "or" is key. As the Supreme Court has often said, "'or' is 'almost always disjunctive.'" *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 87 (2018) (quoting *United States v. Woods*, 571 U.S. 31, 45 (2013)). Nothing in Section 1225(b)(2)(A) suggests otherwise. Therefore, the term "applicant[s] for admission" does not just cover arriving aliens; it also covers aliens who, like Singh, are present in the United States—for decades even—without admission.

This interpretation tracks how other courts understand the term. In *Jennings*, the Supreme Court explained that, "[u]nder [Section 1225], an alien who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as 'an applicant for admission.'" 583 U.S. at 287 (quoting 8 U.S.C. § 1225(a)(1)). And the BIA—with its considerable expertise in immigration law—recognizes that Congress' "unconventional" definition of "applicant for admission" includes "not just those who are expressly seeking permission to enter, but also those who are present in this country without having formally

requested or received such permission."[4] *Matter of Lemus-Losa*, 25 I. & N. Dec. 734, 743 (BIA 2012). At any rate, "[w]hen a statute includes an explicit definition, [the Court] must follow that definition." *Digit. Realty Tr., Inc. v. Somers*, 583 U.S. 149, 160 (2018) (quoting *Burgess v. United States*, 553 U.S. 124, 130 (2008)).

Moreover, Singh's hair-splitting emphasis on the phrase "seeking admission" elevates form over substance. As the Court previously explained, "[t]here is no material disjunction—by the terms of the statute or the English language—between the concept of 'applying' for something and 'seeking' something." *Garibay-Robledo v. Noem*, No. 1:25-CV-177, 2025 WL 3264482, at *5 (N.D. Tex. Oct. 24, 2025). An "applicant" is "[s]omeone who requests something." *Applicant*, Black's Law Dictionary (12th ed. 2024). Thus, an "applicant for admission," in ordinary English usage, is one who requests (or seeks) admission into the United States. *See Apply (for)*, Merriam-Webster Thesaurus (noting that to "seek" is a synonym of to "apply" for) (last visited December 17, 2025).[5] It is unclear how an alien can apply for admission without seeking it.

Other parts of Section 1225 illustrate the point. Section 1225(a)(3) provides that "[a]ll aliens . . . [w]ho are applicants for admission *or otherwise seeking admission* . . . shall be inspected." (emphasis added); *see also Shi v. Lyons*, __ F. Supp. 3d __ , No. 1:25-CV-274, 2025 WL 3637288, at *5 (S.D. Tex. Dec. 12, 2025) (explaining that Section 1225(a)(3)'s "use of 'otherwise' renders 'applicants for admission' a subset of 'seeking admission'—i.e., the former represents one example of the latter"). And Subsection 1225(a)(5) states that

---

[4] Of course, the Court does not reflexively defer to the BIA's interpretation of Section 1225. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13 (2024). But given the BIA's specialized knowledge of the INA, the Court may consider its "power to persuade." *Id.* at 402 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

[5] https://www.merriam-webster.com/thesaurus/apply%20(for) [https://perma.cc/7FNU-M7C9].

– 9 –

"[a]n applicant for admission may be required to state under oath any information sought by an immigration officer regarding the purposes and intentions of the applicant *in seeking admission* to the United States." (emphasis added). The logical import of this phrasing is that an "applicant for admission" is also "seeking admission" under the statute. "Insofar as the term 'applicant for admission' is more passive than 'seeking admission,' this is inherent in the nature of agent nouns and their corresponding gerunds." *Garibay-Robledo*, 2025 WL 3264482, at *5. As such, Section 1225 cannot be read to limit its application to aliens arriving at the border. Dkt. No. 1 ¶ 32.

In fact, if Congress wanted to limit Section 1225(b)(2)(A) to arriving aliens, it could have done so. Neighboring provisions in Section 1225 expressly refer to "arriving alien[s]." *See, e.g.*, 8 U.S.C. §§ 1225(a)(2) ("arriving alien who is a stowaway is not eligible to apply for admission or to be admitted"), 1225(d)(2) (addressing "authority to order detention and delivery of arriving aliens" coming to the United States via vessel or aircraft). Yet Congress did not use "arriving alien" in Section 1225(b)(2)(A). Generally, when Congress "uses certain language in one part of the statute and different language in another, the [C]ourt assumes different meanings were intended.'" *Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004) (quotation omitted). So the fact that Congress did not refer to "arriving aliens" in Section 1225(b)(2)(A), but did so in other parts of the statute, suggests that the mandatory-detention provision is not limited to aliens arriving at the border.

In sum, the Court concludes that Singh is subject to mandatory detention under Section 1225(b)(2)(A). True, he is not an arriving alien. But the statutory text is unambiguous: "[A]n alien present in the United States who has not been admitted"— including those who have been merely paroled—is also an "applicant for admission." 8

U.S.C. § 1225(a)(1).  And if an "applicant for admission" is "not clearly and beyond a doubt entitled to be admitted," he "shall be detained" pending his removal proceedings.  *Id.* § 1225(b)(2)(A).  When a statute is this clear, it must be applied according to its terms. *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009).

### ii. The statutory history of the INA confirms the Court's reading of the mandatory-detention provision.

"Statutory history, 'the record of enacted changes Congress made to the relevant statutory text over time,' can also provide helpful context" for statutory interpretation. *United States v. Moore*, 71 F.4th 392, 395 (5th Cir. 2023) (quoting *BNSF Ry. Co. v. Loos*, 586 U.S. 310, 329 (2019) (Gorsuch, J., dissenting) (emphasis omitted)).  Here, the statutory history of the INA confirms what the plain text already makes clear: aliens who illegally entered the United States and are later apprehended in the interior are "applicant[s] for admission" who must be detained pending removal under Section 1225(b)(2)(A).

In 1996, Congress added the broad definition of "applicant for admission" to the INA in the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA).  Pub. L. No. 104-208, 110 Stat. 3009.  "Prior to the [IIRIRA], the INA assessed status on the basis of 'entry' as opposed to 'admission.'"  *Martinez v. Att'y Gen.*, 693 F.3d 408, 413 n.5 (3d Cir. 2012) (quoting 8 U.S.C. § 1101(a)(13) (1994)).  Under this so-called entry doctrine, aliens who snuck into the United States without inspection were entitled to the procedural and substantive protections afforded in deportation proceedings.  *Id.*  Yet aliens who presented themselves to immigration officials for inspection—say, at a port of entry—were subject to "more summary exclusion proceedings."  *Id.* (quotation omitted).  This distinction—where aliens who followed the rules and presented for inspection were worse off than those who

broke the law—created "a perverse incentive to enter at an unlawful rather than a lawful location." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020).

IIRIRA did away with this anomaly. Congress replaced the entry doctrine with a criterion based on admission, which it defined as "*lawful* entry . . . after inspection and authorization." 8 U.S.C. § 1101(a)(13)(A) (emphasis added). Congress also added Section 1225(a)(1)—the definition of "applicant for admission"—and mandated detention for all such applicants while their removal proceedings play out. *See* 8 U.S.C. § 1225(b)(2)(A). By defining "applicant for admission" to include all aliens who have not been admitted, Congress thus eliminated the previous incentives to enter the country illegally.

Singh's interpretation of Section 1225(b)(2)(A) marks a return to the days before IIRIRA. On his view, aliens who bypass inspection and settle down in the interior have more procedural protections than aliens who present themselves for inspection at the border. *See* Dkt. No. 1 ¶¶ 29–34. But that, of course, is "the precise situation that Congress intended to do away with by enacting" IIRIRA. *United States v. Gambino-Ruiz*, 91 F.4th 981, 990 (9th Cir. 2024). Thus, the INA's statutory history supports the view that Section 1225(b)(2)(A) requires detention without bond for all applicants for admission—including those who entered the country illegally and have resided here for years.

### iii.    Singh's counterarguments are not persuasive.

Singh lodges two additional arguments against applying Section 1225(b)(2)(A). Neither have merit. He first points to past practice, noting that—until last year—aliens who entered the country illegally and were later placed in standard removal proceedings received bond hearings under Section 1226(a), unless their criminal history made them ineligible. Dkt. No. 1 ¶¶ 12–19. Indeed, after IIRIRA, the Executive Office of Immigration Review

issued an interim rule explaining that aliens present in the United States without admission are typically eligible for bond. *See Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). That practice continued for several decades.

Then, in July 2025, the U.S. Department of Homeland Security distributed an internal policy (which was later leaked) titled "Interim Guidance Regarding Detention Authority for Applicants for Admission." *See Maldonado Vazquez v. Feeley*, ___ F. Supp. 3d ___, No. 2:25-CV-1542, 2025 WL 2676082, at *5 & n.2 (D. Nev. Sept. 17, 2025) (describing the leaked DHS policy and noting that the government did not contest its authenticity). The policy advised that DHS, in coordination with the U.S. Department of Justice, "revisited its legal position" and concluded that Section 1225, not Section 1226, "is the applicable immigration detention authority for all applicants for admission." *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, AILA Doc. No. 25071607, Am. Immigr. Laws. Ass'n (July 8, 2025).[6] Thus, DHS maintained the position—which the BIA later adopted in *Yajure Hurtado*, 29 I. & N. Dec. at 220—that all aliens who entered the country without admission are ineligible for bond.[7] According to Singh, this

---

[6] https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission [https://perma.cc/5GKM-JYGX]

[7] On December 18, 2025, the Central District of California purported to vacate the DHS policy under the Administrative Procedure Act. *Maldonado Bautista v. Noem*, No. 5:25-CV-1873, 2025 WL 3678485, at *1 (C.D. Cal. Dec. 18, 2025). But as this Court explained in *Calderon Lopez v. Lyons*, ___ F. Supp. 3d ___, No. 1:25-CV-226, 2025 WL 3683918 (N.D. Tex. Dec. 19, 2025), that purported relief violated the INA. *Id.* at *10–11. "[B]ecause the Central District lacks jurisdiction under the INA to hear the APA challenge to the DHS policy, its December 18 order lacks the authority necessary to vacate the policy." *Id.* at *7 n.14. Even assuming the DHS policy is now vacated, *Yajure Hurtado*'s "broader, independent decision" mandating detention without bond remains in effect. *Id.* at *1.

new policy "rejected well-established understanding of the statutory framework and reversed decades of practice." Dkt. No. 1 ¶ 20.

On close review, this background hurts Singh more than it helps. The post-IIRIRA interim rule states that "*[d]espite being applicants for admission*, aliens who are present without having been admitted or paroled . . . will be eligible for bond and bond redetermination." 62 Fed. Reg. at 10323 (emphasis added). "The effect of this change," the rule goes on to explain, "is that inadmissible aliens, except for arriving aliens, have available to them bond redetermination hearings before an immigration judge, while arriving aliens do not." *Id.* The clear implication of this language is that, despite possessing statutory authority to deny bond to all non-admitted aliens, the government previously declined to exercise the full extent of its authority under the INA.

When the current Trump Administration took office, it was free to reconsider the government's position. As the BIA explained in *Yajure Hurtado*, neither "DHS or its predecessor, the Immigration and Naturalization Service, previously rais[ed] the current [detention] issue" before the BIA. 29 I. & N. Dec. at 225 n.6. Therefore, while "for years Immigration Judges have conducted bond hearings for aliens who entered the United States without inspection," *id.*, that past practice was not required by binding case law. No doubt, "the longstanding practice of the government . . . can inform a court's determination of what the law is." *Loper Bright*, 603 U.S. at 386 (citation modified). "But a 'long-established practice' does not justify a rule that denies statutory text its fairest reading." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 329 (2015). Here, the government's past practice of affording bond hearings to non-admitted aliens cannot overcome the text's clear command.

Moreover, Singh notes that many district courts across the country have rejected the mandatory-detention policy as a violation of the INA.  *See* Dkt. No. 1 ¶¶ 25–28.  That does not, however, make them right.  This case turns on the statutory text—not on the opinions of other district courts, no matter how informative they may be.  Even so, Singh's survey of district court authority is not as monolithic as it may seem.  Many courts—including several in the Fifth Circuit—have concluded that petitioners like Singh are not entitled to a bond hearing.[8]

Moreover, it is clear that many courts in the majority did not meaningfully engage in analysis or address the minority position.  In fact, one judge dismissed the minority position as "baseless."  *Gimenez Rivero v. Mina*, No. 6:26-CV-066, 2026 WL 199319, at *5 (M.D. Fla. Jan. 26, 2026); *see Escobar Salgado v. Mattos*, ___ F. Supp. 3d ___, No. 2:25-CV-1872, 2025 WL 3205356, at *22 n.13 (D. Nev. Nov. 17, 2025) (dismissing the minority position as "not meaningfully contend[ing] with the statutory text").  Another counted up the number of majority opinions, called them "plainly correct" with little discussion, and waived off the minority position as "difficult to credit."  *Demirel v. Fed. Detention Ctr. Phila.*, No. 25-CV-5488, 2025 WL 3218243, at *4, 5 (E.D. Pa. Nov. 18, 2025); *Alkis v. ICE*, No. 5:25-CV-168, Dkt. No. 22 at 5 (S.D. Tex. Nov. 4, 2025) ("Based on the abundance of cases that have already addressed these arguments, the Court declines to restate the in-depth analysis

---

[8] *See, e.g.*, *Montelongo Zuniga*, 2025 WL 3755126, at *7; *Cabanas*, 2025 WL 3171331, at *4; *Mejia Olalde*, 2025 WL 3131942, at *2; *P.B. v. Bergami*, No. 3:25-CV-2978, 2025 WL 3632752, at *3 (N.D. Tex. Dec. 13, 2025); *Rodriguez v. Noem*, ___ F. Supp. 3d ___, No. 9:25-CV-320, 2025 WL 3639440, at *2 (E.D. Tex. Dec. 10, 2025); *Sandoval v. Acuna*, 6:25-CV-1467, 2025 WL 3048926, at *5 (W.D. La. Oct. 31, 2025); *Vargas Lopez v. Trump*, ___ F. Supp. 3d ___, No. 8:25-CV-526, 2025 WL 2780351, at *2 (D. Neb. Sept. 30, 2025); *Chavez v. Noem*, ___ F. Supp. 3d ___, No. 3:25-CV-2325, 2025 WL 2730228, at *4–5 (S.D. Cal. Sept. 24, 2025).

provided by these courts but stands in agreement.").⁹ Some courts now only ask the government whether a new case "is materially distinguishable" from the court's earlier judgment on the issue. *See T. v. Noem*, No. 26-CV-107, Dkt. No. 3 at 2 (D. Minn. Jan. 8, 2026); *Cruz Santos v. Baker*, No. 25-CV-18959, Dkt. No. 13 at 1–2 (D.N.J. Dec. 24, 2026).

To be clear: the Court respects that it is in the minority on this issue. It has taken notice and considered the many opinions to the contrary, and the reasoning in this Order reflects that. The best approach when encountering pushback is to tackle it head-on, discuss, and explain one's position. *See Weng v. Genalo*, No. 25-CV-09595, 2026 WL 194248, at *4–6 (S.D.N.Y. Jan. 25, 2026) (discussing in detail why that court departed from other judges in the same district and adopted the minority position). It is less persuasive to engage in argumentum ad populum, mock the remainder as lacking any "cogent argument," and demand concession to the many. *Gimenez Rivero*, 2026 WL 199319, at *5.

Until a higher authority resolves this issue for good, the Court concludes that the INA authorizes mandatory detention for all non-admitted aliens under Section 1225(b)(2)(A). Because the statutory text mandates Singh's detention, his claim regarding the INA's implementing regulations necessarily fails, too.

---

⁹ This process of counting cases is plainly irrational. A few judges compose a great deal of the nationwide habeas docket. Is the weight of this issue to be decided because one judge in Nevada issues dozens of cases with identical language but different petitioners? *See Calderon Lopez*, 2025 WL 3683918, at *5 n.10 (citing *Livia Vicharra v. Henkey*, No. 2:25-CV-2336, 2025 WL 3564725 (D. Nev. Dec. 12, 2025)). Likewise, to earn legitimacy for the minority, must this Court publish each and every decision to Westlaw? Is this Court entitled to more weight because it handles 60% of the Northern District of Texas's immigration habeas petitions? There is nothing amiss about stating the point repeatedly, as this Court has done. *See supra* n.2. But number counting is close to useless for reasoning what is correct.

### B. The Due Process Clause does not require the government to give Singh a bond hearing.

Next is Singh's claim that the government's refusal to provide a bond hearing violates the Due Process Clause of the Fifth Amendment. Dkt. No. 1 ¶¶ 46–49. He devotes only a few sentences to this claim, arguing that he "has a fundamental interest in liberty and being free from official restraint," and that his detention "without a bond redetermination hearing to determine whether he is a flight risk or danger to others violates his right to due process." *Id.* ¶¶ 48–49. He does not clarify whether his challenge is based on substantive or procedural due process. But either way, he is not entitled to relief.

Start with substantive due process. That doctrine protects "only 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition.'" *Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)). While still recognizing due-process rights for aliens present in the United States, *see, e.g.*, *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025), the Supreme Court has long affirmed the constitutionality of executive immigration procedures. The "through line of history," the Supreme Court recently explained, is "recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens." *Muñoz*, 602 U.S. at 911–12. To that end, "Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 80 (1976).

The principle is no less true for immigration detention. In fact, the Supreme Court has endorsed the constitutionality of detaining aliens without bond during the pendency of removal proceedings. In *Demore v. Kim*, the Supreme Court acknowledged that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings." 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). But it clarified that

– 17 –

"detention during deportation proceedings" is nevertheless a "constitutionally valid aspect of the deportation process." *Id.* Indeed, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Id.* at 528. It follows that "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.* at 526. Against that backdrop, the notion that substantive due process requires a bond hearing is untenable.

A procedural due process claim fares no better. As an "applicant for admission," Singh has "only those rights regarding admission that Congress has provided by statute." *Thuraissigiam*, 591 U.S. at 140; *see Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative."). With Section 1225, Congress set the procedural rights afforded to aliens who are present in the United States without admission. "Read most naturally," Section 1225(b)(2)(A) "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Jennings*, 583 U.S. at 297. No part of the statute "says anything whatsoever about bond hearings." *Id.* Accordingly, Singh is not entitled to a bond hearing as a matter of procedural due process.

**4.  Conclusion**

In short, Singh, as an "applicant for admission," is properly detained without bond under Section 1225(b)(2)(A). Nothing about the INA, its implementing regulations, or the Due Process Clause requires a contrary conclusion. Thus, the petition for a writ of habeas corpus (Dkt. No. 1) is denied.

The Clerk of Court is directed to serve this Order electronically on the United States Attorney's Office for the Northern District of Texas pursuant to the current Service of Process Agreement for federal habeas petitions under 28 U.S.C. § 2241.

So ordered on February 3, 2026.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE